[Cite as *Gullotta v. McKinzie*, 2014-Ohio-5729.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GIUSEPPE GULLOTTA | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellant | |
| -vs- | |
| | Case No. 2014CA00045 |
| TIMOTHY D. MCKINZIE, ET AL. | |
| Defendants-Appellees | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Stark County Common
Pleas Court, Case No. 2013CV01619

JUDGMENT:       Affirmed

DATE OF JUDGMENT ENTRY:       December 22, 2014

APPEARANCES:

For Plaintiff-Appellant       For Defendant-Appellee

JAMES J. COLLUM       TIMOTHY D. MCKINZIE
Crescent Pointe Building       McKinzie and Associates
4774 Munson Street, NW, Suite 400       529 White Pond Drive
Canton, Ohio 44718       Akron, Ohio 44320

*Hoffman, P.J.*

{¶1} Plaintiff-appellant Giuseppe Gullotta appeals the February 28, 2014 Order entered by the Stark County Court of Common Pleas, which approved and adopted the magistrate's December 19, 2013 Decision with amendments and modifications. Defendant-appellee is Timothy McKinzie.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellee is an attorney licensed to practice in the state of Ohio. In October, 2004, Appellant retained Appellee to represent him in a foreclosure action ("the Action"). The Action was the second foreclosure action filed against Appellant, but Appellee was not involved in the first matter. The parties knew each other socially prior to Appellant's retaining Appellee in his professional capacity. Appellee's firm also had represented Appellant in other matters.

{¶3} The Action against Appellant was essentially indefensible due to Appellant's default on a promissory note secured by a mortgage. Appellant's primary goal was to obtain a loan modification which would lower his monthly mortgage payments. Appellant had, at one point in his career, worked as a real estate broker. He was familiar with real estate contracts and negotiating contract terms.

{¶4} The parties agreed Appellant would pay Appellee $175/hour for his professional services. Prior to signing the fee agreement, Appellant advised Appellee he would not be able to pay the legal fees until his financial affairs were in order. Appellee agreed to allow Appellant to pay at a future time. Appellant executed the fee agreement.

**{¶5}** Over the course of his representation of Appellant during the Action, Appellee never sent Appellant a monthly bill. Appellant assumed he did not owe Appellee attorney fees in connection with the foreclosure matter. The bank in the foreclosure action filed a voluntary dismissal in March, 2005. Following the dismissal, Appellee did not send Appellant an invoice for his services.

**{¶6}** In October, 2005, the bank filed a third foreclosure action ("the Third Foreclosure") against Appellant. Again, Appellee represented Appellant. Appellee believed the double dismissal rule provided a potential defense to the Third Foreclosure. Appellee took leave to plead on behalf of Appellant. Appellee made numerous phone calls to Appellant, informing him an answer to the complaint would be due soon and the two needed to meet. Appellant did not meet with Appellee until January 2, 2006. At that meeting, Appellee discussed a potential new defense, but explained asserting the defense would increase the complexity of the case. Appellee advised Appellant he believed it was the best course of action. Appellee also indicated pursuing the defense would require a great deal of work. Appellant expressed concerns about his ability to pay the attorney fees. Appellee did not send Appellant a new retention letter for his representation of Appellant in the Third Foreclosure.

**{¶7}** Following oral arguments before this Court on January 18, 2007, Appellee informed Appellant he did not believe they would prevail at the appellate level, but noted he felt confident they could get into the Ohio Supreme Court on a conflict. Appellee advised Appellant, if the case went before the Ohio Supreme Court, his fees could "skyrocket". Appellant suggested revising the fee agreement to a contingent fee

agreement if the Ohio Supreme Court accepted the case. The Ohio Supreme Court certified a conflict in August, 2007.

{¶8} The parties met on September 6, 2007, and discussed modifying the fee agreement to a flat fee, contingent upon Appellant's prevailing in the Supreme Court. Appellant suggested $35,000, and proposed other terms for a contingent fee agreement. Appellee stated he wanted to think about this proposal. Appellee revised the proposed terms of the contingent fee agreement on September 22, 2007, and faxed it to Appellant. On September 27, 2007, the parties executed documents finalizing and memorializing the contingent fee agreement. The contingent fee agreement provided, if Appellant prevailed in the Supreme Court and the bank's interest in his property was extinguished, Appellant would pay Appellee a flat fee of $30,000, for attorney fees, as well as pay expenses and costs.

{¶9} Appellant signed a promissory note for $30,000, with an annual interest rate of 6%. Installments on the promissory note were $497.33/month for 72 months, with payments commencing October, 2008. Appellant signed a mortgage securing the $30,000 promissory note.

{¶10} The Ohio Supreme Court ruled in Appellant's favor in December, 2008. As a result of the ultimate disposition of the various foreclosure proceedings, the equity in Appellant's home increased by approximately $100,000.

{¶11} Appellant paid Appellee $4,670 toward attorney fees, which included nine (9) $500 payments and a credit of $170 from money paid for a filing fee which was never needed. At the time of trial, 62 of the 72 monthly installments on the promissory

note had become due, with arrears totaling $26,164.46. The remaining ten (10) installments were due between December, 2013, and September, 2014.

{¶12} Appellee filed the instant action against Appellant on June 14, 2013. Appellant filed an answer and counterclaim. Following discovery and an unsuccessful attempt at mediation, the matter proceeded to trial before the magistrate on November 18 and 19, 2013. The magistrate issued a decision on December 19, 2013. The parties filed respective objections to the decision.

{¶13} Via Order dated February 28, 2014, the trial court adopted the magistrate's decision with amendments and modifications. Therein, the trial court overruled Appellant's objections, sustained Appellee's objections, and awarded Appellee prejudgment interest.

{¶14} It is from this order Appellant appeals, assigning as error:

{¶15} "I. THE TRIAL COURT ERRED GRANTING A JUDGMENT TO THE APPELLEE, TIMOTHY D. MCKINZIE, ON THE SEPTEMBER 27, 2007 CONTINGENCY FEE AGREEMENT THAT WAS SECURED BY A $30,000 PROMISSORY NOTE AND MORTGAGE WHICH ARE ILLEGAL CONTRACTS UNDER THE OHIO RULES OF PROFESSIONAL CONDUCT §1.5, OHIO PUBLIC POLICY AS WELL AS DUE TO UNDUE INFLUENCE."

I

{¶16} Appellant maintains the trial court erred in granting judgment in favor of Appellee based upon the September 27, 2007 contingency fee agreement as the contract was illegal under Ohio Rule of Professional Conduct 1.5, and was the result of undue influence. Specifically, Appellant claims the agreement violated Ohio Rule of

Professional Conduct 1.5 because Appellee failed to provide Appellant with a closing statement; failed to obtain Appellant's written consent for another attorney's work; and violated the considerations set forth in Comment 5 to the Rule.

{¶17} In his Brief to this Court, Appellant neither cites nor appends Ohio Rule of Professional Conduct 1.5. Appellant also does not specify which subsections Appellee allegedly violated. Appellant merely asserts Appellee violated the Rule; therefore, the fee agreement should not be enforced.

{¶18} Upon review of Appellant's arguments, it appears Appellant is asserting violations of subsections (c)(2) and (e), which read:

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by division (d) of this rule or other law.* * *

(2) If the lawyer becomes entitled to compensation under the contingent fee agreement and the lawyer will be disbursing funds, the lawyer shall prepare a closing statement and shall provide the client with that statement at the time of or prior to the receipt of compensation under the agreement. The closing statement shall specify the manner in which the compensation was determined under the agreement, any costs and expenses deducted by the lawyer from the judgment or settlement involved, and, if applicable, the actual division of the lawyer's fees with a lawyer not in the same *firm*, as required in division (e)(3) of this rule. The closing statement shall be signed by the client and lawyer.

* * *

(e) Lawyers who are not in the same *firm* may divide fees only if all of the following apply:

(1) the division of fees is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation and agrees to be available for consultation with the client;

(2) the client has given *written* consent after full disclosure of the identity of each lawyer, that the fees will be divided, and that the division of fees will be in proportion to the services to be performed by each lawyer or that each lawyer will assume joint responsibility for the representation;

(3) except where court approval of the fee division is obtained, the *written* closing statement in a case involving a contingent fee shall be signed by the client and each lawyer and shall comply with the terms of division (c)(2) of this rule;

(4) the total fee is *reasonable*.

**{¶19}** We find the trial court fully considered and analyzed the Rule, and correctly found it to be inapplicable to the situation.

**{¶20}** Appellant further maintains the trial court failed to consider Comment 5 to Rule 1.5, which reads:

An agreement may not be made whose terms might induce the lawyer to improperly curtail services for the client or perform them in a way contrary to the client's interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will

be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client's ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures.

**{¶21}** We find Comment 5 is not relevant to the fee agreement at issue herein nor is it binding on this Court. In fact, the Preamble to the Ohio Rules of Professional Conduct definitively states, "Comments do not add obligations to the rules but provide guidance for practicing in compliance with the rules."

**{¶22}** Assuming, arguendo, the fee agreement violated Rule 1.5, we find any violation does not necessarily render the agreement unenforceable. The Preamble also expressly provides, "Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create a presumption in such case that a legal duty has been breached…They are not designed to be a basis for civil liability."

**{¶23}** Based upon the foregoing, Appellant's sole assignment of error is overruled.

{¶24} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Delaney, J.  and

Baldwin, J. concur